Trinitee G. Green (SBN 24081320)
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tggreen@polsinelli.com

Jeremy R. Johnson (*Pro Hac Vice* Pending)
Brenna A. Dolphin (*Pro Hac Vice* Pending)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
bdolphin@polsinelli.com

PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Northwest Senior Housing Corporation, *et al.*,[1] | Case No. 22-30659 (MVL) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN
FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE DEBTORS
EFFECTIVE AS OF THE PETITION DATE**

**A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, 1100 COMMERCE ST., 14TH FLOOR, COURTROOM NO. 2, DALLAS, TEXAS 75242.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Northwest Senior Housing Corporation (1278) and Senior Quality Lifestyles Corporation (2669). The Debtors' mailing address is 8523 Thackery Street, Dallas, Texas 75225.

82402207.13

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby submit this application (the "**Application**") for entry of an order, substantially in the form of Exhibit A attached hereto (the "**Proposed Order**"), pursuant to sections 327(a), 328(a), and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**"), authorizing the employment and retention of the consulting firm of FTI Consulting, Inc., together with its wholly-owned subsidiaries ("**FTI**"), as financial advisor to the Debtors, effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely on and incorporate by reference the *Declaration of Chad J. Shandler in Support of the Debtors' for Authority to Employ and Retain FTI Consulting, Inc. as Financial Advisor to the Debtors Effective as of the Petition Date* (the "**Shandler Declaration**"), attached hereto as Exhibit B, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334 and the District Court for the Northern District of Texas' *Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

82402207.13

3.      The predicates for the relief requested herein are Bankruptcy Code sections 327(a), 328(a), and 1107, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

4.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (the "**Court**")

5.      The factual background regarding the Debtors and the events leading to the filing of these chapter 11 cases (the "**Chapter 11 Cases**") is set forth in the *Declaration of Nick Harshfield in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [Docket No. 7], which is incorporated herein by reference.

6.      The Debtors continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

## RELIEF REQUESTED

7.      By this Application, the Debtors request entry of an order, authorizing the Debtors to employ and retain FTI, effective as of the Petition Date, to provide financial advisory services during the Chapter 11 Cases, pursuant to and in accordance with the terms and conditions set forth in that certain engagement agreement (the "**Engagement Agreement**"), a copy of which is attached hereto as <u>Exhibit C</u>; and that certain addendum to the Engagement Agreement (the "**Addendum**"), a copy of which is attached hereto as <u>Exhibit D</u>.

## BASIS FOR RELIEF

8.      By this Application, the Debtors seek to employ and retain FTI effective as of the Petition Date to represent the Debtors as financial advisor in connection with the Chapter 11 Cases, pursuant to Bankruptcy Code sections 327(a) and 328(a).

82402207.13

9.      The Debtors have determined, in the exercise of their business judgment, that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. FTI is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings. The Debtors are familiar with the professional standing and reputation of FTI.

10.     As set forth in the Shandler Declaration, FTI has extensive experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

11.     The services of FTI are deemed necessary to enable the Debtors and their professional advisors to maximize the value of the bankruptcy estates and to reorganize successfully. Further, FTI is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## SCOPE OF SERVICES

12.     Copies of the Engagement Agreement and the Addendum are attached hereto as Exhibit C and Exhibit D respectively, and the terms thereunder shall govern the Debtors' retention of FTI except as explicitly set forth herein or in any order granting this Application.

13.     FTI will provide such financial advisory services to the Debtors and their legal advisor as deemed appropriate and feasible in order to advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to, the following:

- Prepare or assist the Debtors' management with the preparation of projected financial statements and/or 13-week cash flow forecast;

- Formulate recapitalization and debt restructuring alternatives, if necessary;

- Prepare presentations to lender(s) relating to restructuring of obligations, if necessary;

- Assist the Debtors and their counsel in negotiations with the Debtors' lender(s) regarding restructuring alternatives, if necessary

- Assist the Debtors and their counsel in negotiations and/or discussions with federal or state regulators, if necessary;

- Assist the Debtors and their counsel in negotiations with the Debtors' personal property lessors regarding improved lease terms or return of property;

- Consult with management and if necessary, assist in the preparation of reports to the Debtors' lenders (and other creditors, as required) regarding the Debtors' financial performance;

- Participate in meetings and telephone calls with management, counsel, lenders and other parties, as necessary;

- Assist in the preparation of financial information for distribution to creditors and others, including, without limitation, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Bankruptcy Court approval is sought;

- Assist the Debtors with the preparation of financial related disclosures required by the Bankruptcy Court, including the Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

- Assist the Debtors with information and analyses required pursuant to the Debtors' use of cash collateral including, without limitation, preparation for hearings regarding the use of cash collateral;

- Assist with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

- Assist with the evaluation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- Assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

82402207.13

- Assist with the coordination of resources related to the Debtors' reorganization efforts;

- Attend meetings and assist in discussions with potential secured lenders, any official committee(s) appointed in the Chapter 11 Cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

- Develop strategy, including communications, relating to residents, former residents, vendors, and employees;

- Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

- Assist in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in the Chapter 11 Cases, including information contained in the disclosure statement;

- Provide testimony as necessary or appropriate at the request of the Debtors; and

- Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals.

## **FTI'S ELIGIBILITY FOR EMPLOYMENT**

14.    FTI has informed the Debtors that, except as may be set forth in the Shandler Declaration, it does not hold or represent any interest adverse to the estates, and therefore believes it is eligible to represent the Debtors. To the best of the Debtors' knowledge and based upon the Shandler Declaration, (a) FTI's connections with the Debtors, Debtors' creditors, any other party-in-interest, or their respective attorneys are disclosed on Exhibit 2 to the Shandler Declaration; and (b) the FTI professionals working on this matter are not relatives of the United States Trustee or of any known employee in the office thereof, or any United States Bankruptcy Judge of the District of Northern District of Texas, Dallas Division. FTI has not provided, and will not provide, any

82402207.13

professional services to any of the Debtors' creditors, other parties-in-interest, or their respective attorneys and accountants on any matter related to the Debtors or the Chapter 11 Cases.

15.     FTI will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered, FTI will supplement its disclosures to the Court.

16.     FTI has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Cases.

## **TERMS OF RETENTION**

17.     In accordance with the terms of the Engagement Letter, FTI will be paid for the services provided by its professionals at hourly rates as set forth below. FTI will also be reimbursed for reasonable out-of-pocket expenses incurred in connection with the Chapter 11 Cases, which would include reasonable legal fees incurred by FTI related to FTI's retention in the Chapter 11 Cases, subject to Court approval.

18.     The customary hourly rates, subject to periodic adjustments, charged by FTI professionals anticipated to be assigned to the Chapter 11 Cases are as follows

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $920 - $1,325 |
| Directors / Senior Directors / Managing Directors | $590 - $960 |
| Consultants/Senior Consultants | $370 - $695 |
| Administrative / Paraprofessionals | $130 - $300 |

## **FEES**

19.     FTI is not owed any amounts with respect to pre-petition fees and expenses.

20.     The Debtors understand that FTI intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local

82402207.13

rules, orders of this Court and the guidelines established by the United States Trustee. Further, FTI

understands that interim and final fee awards are subject to approval by the Court.

21.     FTI received $75,000, as a retainer at the time of engagement in connection with

preparing for and conducting the filing of the Cases, as described in the Engagement Agreement.

In the ninety (90) days prior to the Petition Date, the Debtors paid FTI $1,592,548.19 (inclusive

of an additional retainer payment of $175,000) for professional services performed and expenses

incurred. As of the Petition Date, there is an unapplied retainer of $250,000.

22.     Given the numerous issues that FTI may be required to address in the performance

of the services contemplated by the Engagement Agreement, FTI's commitment to the variable

level of time and effort necessary to address all such issues as they arise, and the market prices for

such services for engagements of this nature in an out-of-court context, as well as in chapter 11

proceedings, the Debtors submit that the fee arrangements set forth herein and more specifically

under the Engagement Agreement are reasonable under the standards set forth under Bankruptcy

Code section 328(a).

## **INDEMNIFICATION**

23.     In addition to the foregoing, and as a material part of the consideration for the

agreement of FTI to furnish services to the Debtors pursuant to the terms of this Application, FTI

believes that the following indemnification terms are customary and reasonable for financial

advisors in chapter 11 cases:

- subject to the provisions of subparagraphs (b) and c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, FTI in accordance with the Engagement Agreement for any claim arising from related to or in connection with the services provided for, whether pre-petition or post-petition, in the Engagement Agreement;

- the Debtors shall have no obligation to indemnify FTI for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from FTI's gross negligence, willful misconduct,

8

breach of fiduciary duty (if any), bad faith, or fraud unless the Court determines that indemnification would be permissible under applicable law or (ii) settled prior to a judicial determination as to FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud, but determined by this Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be a claim or expense for which FTI should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Agreement; and

- if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Application, including, without limitation, the advancement of defense costs, FTI must file an application in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, and not as a provision limiting the duration of the Debtors' obligation to indemnify FTI.

24.     The Debtors submit that the foregoing indemnification provisions are customary and reasonable for financial advisors in chapter 11 cases. *See, e.g., In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000).

## APPLICABLE AUTHORITY

25.     The Debtors submit that the retention of FTI under the terms described herein is appropriate under of the Bankruptcy Code sections 327(a), 328, and 1107(b). Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that: (i) is not a creditor, an equity security holder, or an insider; (ii) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (iii) does not have an interest materially adverse to the interest of the estate or of any class of

82402207.13

creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

26.     Further, Bankruptcy Code section 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). FTI's pre-petition relationship with Debtors is therefore not an impediment to FTI's retention as Debtors' post-petition financial advisor.

27.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). Debtors submit that the terms and conditions of FTI's retention as described herein, including the proposed compensation terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain FTI to serve as their financial advisor on the terms and conditions set forth herein.

## **NOTICE**

28.     Notice of this Application will be provided to: (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on an aggregate basis; (c) UMB Bank, N.A., as Trustee and counsel thereto; (d) Lifespace Communities, Inc. and counsel thereto; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; (g) the United States Department of Justice; (h) the Texas State Attorney General; (i) the United States Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

82402207.13

29.     The Debtors respectfully submit that such notice is sufficient and that no further notice of this Application is required.

## **NO PRIOR REQUEST**

30.     No previous request for the relief sought herein has been made to this Court or any other court.

*Remainder of Page Intentionally Blank*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially similar to the form of order attached hereto as <u>Exhibit A</u>, granting the relief requested in this Application and such other and further relief as the Court deems just and proper.

Dated:   April 14, 2022
         Dallas, Texas

Respectfully submitted,

**Nick Harshfield**
**Treasurer**
**Northwest Senior Housing Corporation**

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Northwest Senior Housing Corporation, *et al.*,[2] | Case No. 22-30659 (MVL) |
| Debtors. | |

**ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF**
**FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE DEBTORS**
**EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "**Application**")[3] of the Debtors for entry of an order (the

"**Order**") authorizing the retention and employment of FTI Consulting, Inc., together with its

wholly-owned subsidiaries ("**FTI**"), as financial advisor to the Debtors effective as of the Petition

Date, as more fully described in the Application; the Court having reviewed the Application, the

First Day Declaration, and the declaration of Chad J. Shandler attached to the Application as

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Northwest Senior Housing Corporation (1278) and Senior Quality Lifestyles Corporation (2669). The Debtors' mailing address is 8523 Thackery Street, Dallas, Texas 75225.
[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

1

Exhibit B (the "**Shandler Declaration**"); and the Court being satisfied, based on the representations made in the Application and the Shandler Declaration that FTI is "disinterested: as such term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and as required under Bankruptcy Code section 327(a), and that FTI represents no interest adverse to the Debtors' estates; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Application is in the best interests of the Debtors, the Debtors' estates, the Debtors' creditors, and other parties in interest; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Application is GRANTED as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      Pursuant to Bankruptcy Code sections 327(a) and 328(a), the Debtors are authorized to employ and retain FTI as financial advisor in the Chapter 11 Cases effective as of the Petition Date.

4.      FTI shall apply for compensation earned for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in accordance with

82402207.13

the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, this Order and any other applicable orders of this Court.

     5.     The following indemnification provisions are approved:

     a.  subject to the provisions of subparagraphs (b) and c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, FTI in accordance with the Engagement Agreement for any claim arising from related to or in connection with the services provided for, whether pre-petition or post-petition, in the Engagement Agreement;

     b.  the Debtors shall have no obligation to indemnify FTI for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud unless the Court determines that indemnification would be permissible under applicable law or (ii) settled prior to a judicial determination as to FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud, but determined by this Court, after notice and a hearing pursuant to subparagraph (c), *infra*, to be a claim or expense for which FTI should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Agreement; and

     c.  if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Application, including, without limitation, the advancement of defense costs, FTI must file an application in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, and not as a provision limiting the duration of the Debtors' obligation to indemnify FTI.

     6.     The Debtors and FTI are authorized to take all actions necessary to effectuate

the relief granted pursuant to this Order in accordance with the Application.

82402207.13

7.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Local Rules are satisfied by the contents of the Application.

8.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

9.     To the extent there is any inconsistency between the terms of the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

10.    This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Order.

### # # # End of Order # # #

Submitted by:

Trinitee G. Green (SBN 24081320)
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
tggreen@polsinelli.com

and

Jeremy R. Johnson (*Pro Hac Vice* Pending)
Brenna A. Dolphin (*Pro Hac Vice* Pending)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
bdolphin@polsinelli.com

*Proposed Counsel to Debtors and*
*Debtors-in-Possession*

82402207.13

## Exhibit B

**Shandler Declaration**

82402207.13

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Northwest Senior Housing Corporation, *et al.*,[1] | Case No. 22-30659 (MVL) |
| Debtors. |  |

**DECLARATION OF CHAD J. SHANDLER IN SUPPORT OF THE
DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN
FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE DEBTORS
EFFECTIVE AS OF THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, Chad J. Shandler declares as follows:

1.        I am a Senior Managing Director with FTI Consulting, Inc., together with its wholly-owned subsidiaries ("**FTI**"), an international consulting firm. I submit this declaration (the "**Declaration**") on behalf of FTI in support of the application (the "**Application**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), for entry of an order authorizing the retention and employment of FTI as financial advisor under the terms and conditions set forth in the Application; and the Engagement Agreement and the Addendum attached thereto as <u>Exhibit C</u>[2] and <u>Exhibit D</u> respectively. I am generally familiar with the Bankruptcy Code and Bankruptcy Rules, and FTI will comply with them and orders issued by the Court. Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify thereto.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Northwest Senior Housing Corporation (1278) and Senior Quality Lifestyles Corporation (2669). The Debtors' mailing address is 8523 Thackery Street, Dallas, Texas 75225.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

82402207.13

**Disinterestedness and Eligibility**

2.      In connection with the preparation of this Declaration, FTI conducted a review of its

contacts with the Debtors, their affiliates and certain entities holding large claims against or interests

in the Debtors that were made reasonably known to FTI. A listing of the parties reviewed is reflected

on Exhibit 1 to this Declaration. FTI's review, completed under my supervision, consisted of a query

of the Exhibit 1 parties within an internal computer database[4] containing names of individuals and

entities that are present or recent former clients of FTI. A listing of such relationships that FTI

identified during this process is set forth in Exhibit 2 to this Declaration.

3.      Based on the results of its review, except as otherwise discussed herein, FTI does not

have a relationship with any of the parties on Exhibit 1 in matters related to these proceedings. FTI

has provided and could reasonably expect to continue to provide services unrelated to the Chapter 11

Cases for the various entities shown on Exhibit 2. FTI's assistance to these parties has been related to

providing various financial restructuring, litigation support, technology, strategic communications,

and economic consulting services. To the best of my knowledge and except as otherwise disclosed

herein, no services have been provided to these parties in interest that involve any rights related to the

Debtors and the Chapter 11 Cases, nor does FTI does not hold or represent any interest adverse to

the bankruptcy estates, nor does FTI's involvement in these chapter 11 cases compromise its ability

to continue such consulting services.

4.      In addition to the relationships disclosed on Exhibit 2 to this Declaration, FTI

discloses the following:

- Before the Petition Date, FTI was retained by Debtors Northwest Senior
  Housing Corporation and its affiliate Tarrant County Senior Living Center,
  Inc. to provide certain financial advisory and consulting services.

---

[4] FTI's computer database covers FTI Consulting, Inc. and its wholly owed subsidiaries globally.

3

- Between March 17, 2021 and June 18, 2021, FTI was retained by Lifespace Communities, Inc., an affiliate of the Debtors, to provide certain human resource due diligence in connection with the acquisition of New Castle Place LLC.

5.      As part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Chapter 11 Cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys, law firms and financial institutions, some of whom may be involved in these proceedings.

6.      In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtors and the Chapter 11 Cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which FTI is to be employed and none are in connection with the Chapter 11 Cases.

7.      FTI is not a "creditor" of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge (a) is a creditor, equity security holder, or insider of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii)

82402207.13

neither holds nor represents an interest adverse to the Debtors or their estates. Therefore, FTI believes it is eligible to represent the Debtors under Bankruptcy Code section 327(a).

8.     It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties-in-interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

## Professional Compensation

9.     Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of this District, orders of this Court, and applicable U.S. Trustee guidelines, FTI will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by FTI, including legal fees related to this retention application and future fee applications as approved by the Court. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application for the employment of FTI. These hourly rates are adjusted periodically, typically on an annual basis. I believe that the fee structure as set forth in the Application is reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11.

10.     According to FTI's books and records, during the ninety (90) days before the Petition Date, FTI received $175,000 from the Debtors for professional services performed and expenses incurred. Further, FTI's current estimate is that it has received unapplied advance payments from the Debtors in excess of pre-petition billings in the amount of $250,000. The Debtors and FTI have agreed that any portion of the advance payments not used to compensate

5

FTI for its pre-petition services and expenses will be held and applied against its final post-petition

billing and will not be placed in a separate account.

11.      To the best of my knowledge, (a) no commitments have been made or received

by FTI with respect to compensation or payment in connection with this case other than in

accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any

other entity to share with such entity any compensation received by FTI in connection with the

Cases.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 14, 2022          */s/  Chad J. Shandler* _____
                                    Chad J. Shandler
                                    Senior Managing Director, FTI Consulting, Inc.

6

82402207.13

# EXHIBIT C

**Engagement Agreement**

82402207.13



Chad J. Shandler
FTI Consulting, Inc.
3 Times Square, 10th Floor
New York, New York 10036
212 836 4194
Chad.Shandler@FTIconsulting.com

<u>PRIVATE & CONFIDENTIAL</u>

February 17, 2021

Thomas Califano
Partner
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104

Re: <u>Northwest Senior Housing Corporation</u>

Dear Mr. Califano:

1.  **Introduction**

    This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, DLA Piper LLP (US) (the "Firm"), to provide certain financial advisory and consulting services (the "Services") as set forth below in relation to your representation of Northwest Senior Housing Corporation ("Edgemere" or the "Company").  This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.  **Scope of Services**

    The Services, to be performed at your direction and at the direction of the Company to assist you in the provision of advice and legal services to the Company, are expected to include the following:

    <u>Assessment Services</u>
    - Gain an understanding of the Company's business, books and records and reporting systems;
    - Assessment of the Company's operations and financial performance and recommendations for improvement, including but not limited to:
        - Revenue, billing, and cash collection procedures;
        - Operating expenses;
        - Management and staffing;
        - Marketing function and programs; and
        - Organizational structure;
    - Assessment of the Company's liquidity and working capital, including sources of cash, accounts receivable and accounts payable;
    - Assessment of the Company's reported results of operations;
    - Assessment of prior consultants' reports, if any; and
    - General overall assessment of the Company's facilities.

DLA Piper LLP (US)
February 17, 2021

**Consulting Services**
- Prepare/or assist the Company's management with the preparation of projected financial statements and/or 13week cash flow forecast;
- Formulate recapitalization and debt restructuring alternatives, if necessary;
- Preparation of presentations to lender(s) relating to forbearance and/or restructuring of obligations, if necessary;
- Assist the Company and its counsel in negotiations with the Company's lender(s) regarding forbearance terms and/or other restructuring alternatives, if necessary;
- Assist the Company and its counsel in negotiations and/or discussions with Federal or state regulators, if necessary;
- Assist the Company and its counsel in negotiation with the Company's personal property lessors regarding improved lease terms or return of property;
- Assist the Company with an affiliation or the sale of its assets, including data room support and negotiations with prospective interested parties and purchasers of the Company's assets;
- Consult with management, and where necessary assist in the preparation of reports to the Company's lender(s) (and other creditors as required) regarding its financial performance; and
- Participate in meetings and telephone calls with management, counsel, lenders and other parties, as necessary.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by you to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist you or the Company (and its other legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

3.      **Privileged and Confidential Work Product**

To the extent possible, written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential". Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without your permission, the content of any oral or written confidential communication

DLA Piper LLP (US)
February 17, 2021

received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you that are identified as confidential.

4.      **Fees**

We understand that we are being retained by You in connection with your provision of legal services to the Company. Accordingly, we will not look to the Firm for payment of our fees but rather will look solely to the Company. We acknowledge that the Firm will have no obligation for our fees. Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $950 – 1,295 |
| Directors / Senior Directors / Managing Directors | 715 –   935 |
| Consultants/Senior Consultants | 385 –   680 |
| Administrative / Paraprofessionals | 155 –   290 |

Hourly rates are generally revised periodically. We will notify you of any changes to our rates. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable for the International divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Further, if FTI and/or any of its emloyees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $75,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may

DLA Piper LLP (US)
February 17, 2021

immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees that invoices are due upon receipt and will promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI has earned and will be entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

5. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

6. **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company, the Master Trustee, as defined in the Master Trust Indenture between the Company and UMB Bank, N.A. dated as of November 15, 1999, effective as of April 1, 2006 and the Supplemental Indenture #6 dated March 1, 2017, and its counsel. As you may be aware, FTI is regularly retained by the Master Trustee (or law firms retained by the Master Trustee). However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not

DLA Piper LLP (US)
February 17, 2021

accept an engagement that directly conflicts with this Engagement without your prior written consent.

7.       **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Chad J. Shandler at 212 841 9349.

Yours faithfully,

FTI CONSULTING, INC.

By:    _____
        Chad J. Shandler
        Senior Managing Director

Attachment – As stated

DLA Piper LLP (US)
February 17, 2021

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

DLA Piper LLP (US)

By: _____
     Thomas Califano
     Partner

Date: 2/19/2021 _____

Northwest Senior Housing Corporation

By: _____
     Nick Harshfield
     CFO, Treasurer, and Secretary

Date: _____

DLA Piper LLP (US)
February 17, 2021

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

DLA Piper LLP (US)

By: _____
       Thomas Califano
       Partner

Date:_____

Northwest Senior Housing Corporation

By: _____
       Nick Harshfield
       CFO, Treasurer, and Secretary

Date:   02/17/2021_____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated February 17, 2021.   The engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.**     **Reports and Advice**

1.1       **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of you and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither you nor the Company shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.**     **Information and Assistance**

2.1       **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2       **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3       **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4       **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.   Additional Services**

3.1     **Responsibility for other parties** – You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

**4.    Confidentiality**

4.1     **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1     is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2     is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3     is or has been independently developed by the recipient.

4.2     **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3     **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4     **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5     **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.   Termination**

5.1     **Termination of Engagement with notice** – All parties (you, the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6.    Indemnification and Liability Limitation

6.1    **Indemnification** - The Company agrees to indemnify and hold harmless FTI  and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all third party claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to the retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.  FTI agrees to indemnify and hold harmless the Company and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees from and against any and all third party claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to an Adverse Determination.

6.2    **Limitation of liability -** Excluding a party's indemnification obligations for third party claims, neither party  shall be liable to  the other party, or  a party's successors, affiliates or assigns for (a) damages in excess of the total amount of the fees paid and payable to FTI under this Engagement Contract, or (b) consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

## 7.    Governing Law, Jurisdiction and WAIVER OF JURY TRIAL

7.1    **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2    **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**<u>Confirmation of Standard Terms and Conditions</u>**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

DLA Piper LLP (US)


By: _____

       Thomas Califano
       Partner

Date:_____


Northwest Senior Housing Corporation


By:    _____

       Nick Harshfield
       CFO, Treasurer, and Secretary


Date:   _____

Case 22-30659-mvl11    Doc 29    Filed 04/14/22    Entered 04/14/22 13:44:07    Desc Main
Document      Page 36 of 49

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

DLA Piper LLP (US)

By: _____
    Thomas Califano
    Partner

Date: 2 / 19 / 2021

Northwest Senior Housing Corporation


By: _____
    Nick Harshfield
    CFO, Treasurer, and Secretary

Date: _____

## **EXHIBIT D**

**Addendum**

82402207.13



Chad J. Shandler
FTI Consulting, Inc.
1166 Avenue of the Americas
15th Floor
New York, New York 10036
212 841 9349

PRIVATE & CONFIDENTIAL

February 1, 2022

Thomas Califano
Partner
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Re: Northwest Senior Housing Corporation

Dear Mr. Califano:

1.    **Introduction**

This letter is an addendum to the engagement contract between FTI Consulting, Inc. ("FTI") and you, Sidley Austin LLP (the "Firm") dated May 1, 2021 (the "May 2021 LOE") (this "Addendum Letter"), to provide certain financial advisory and consulting services (the "Services") as set out in the May 2021 LOE in relation to your representation of Northwest Senior Housing Corporation ("Edgemere" or the "Company").  Pursuant to this Addendum Letter, the Services shall be amended to include the additional services as outlined in Section 2, and consistent with Section 4 of the May 2021 LOE, effective January 1, 2022, standard hourly rates shall be revised as outlined in Section 3.  Additionally, pursuant to Section 3 of the May 2021 LOE, the Company agrees that the Initial Cash on Account will increase by $150,000, or an aggregate amount of $250,000.

2.    **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

(a)    assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Banktrupcy Court approval is sought;

(b)    assistance to the Company in the preparation of financial-related disclosures required by the Bankruptcy Court, including the Company' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

(c)    assistance to the Company with information and analyses required pursuant to the Company' use of cash collateral including, but not limited to, preparation for hearings regarding the use of cash collateral;

(d)    assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(e)    assistance regarding the valuation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(f)    assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(g)    assistance to Company' management team and the Firm focused on the coordination of resources related to the reorganization effort;

(h)    attendance at meetings and assistance in discussions with potential secured lenders, any official committee(s) appointed in these Chapter 11 Cases, the United States Trustee, other parties in interest and professionls hired by same, as requested; other communications with the Company's creditors and governmental authorities (the general direction for which will be determined by the Board);

(i)    develop strategy, including communications, relating to residents, former residents, vendors, and employees;

(j)    analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(k)    assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including information contained in the disclosure statement; and

(l)    provide testimony in these Chapter 11 Cases as necessary or appropriate at the Company's request; and

(m)    rendering such other general business consulting or such other assistance as Company' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals.

3.    **Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**<u>United States</u>**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $920 – 1,325 |
| Directors / Senior Directors / Managing Directors | 590 – 960 |
| Consultants/Senior Consultants | 370 – 695 |
| Administrative / Paraprofessionals | 130 – 300 |

Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

6.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter, please do not hesitate to contact Chad J. Shandler at (212) 841-9349.

Yours faithfully,

FTI CONSULTING, INC.

By:  _____
Chad J. Shandler
Senior Managing Director

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Sidley Austin LLP

By: _____
    Thomas R. Califano
    C200D3F1EC06432...

    Thomas Califano
    Partner

Date:_____
    2/7/2022 | 1:05 PM CST


Northwest Senior Housing Corporation

By: _____
    0FBD63BFF8124CA...

    Nick Harshfield
    Treasurer, and Secretary

Date: _____
    2/7/2022 | 1:06 PM CST



Chad J. Shandler
FTI Consulting, Inc.
1166 Avenue of the Americas
15th Floor
New York, New York 10036
212 841 9349

<u>PRIVATE & CONFIDENTIAL</u>

April 6, 2022

Bobby Guy
Sharholder
Polsinelli PC
401 Commerce Street
Suite 900
Nashville, TN 37219

Re: <u>Senior Quality Lifestyles Corporation</u>

Dear Mr. Guy:

1. **Introduction**

This letter is an addendum to the engagement contract between FTI Consulting, Inc. ("FTI") and you, Polsinelli (the "Firm") dated March 3, 2022 (the "March 2022 LOE") (this "Addendum Letter"), to provide certain financial advisory and consulting services (the "Services") as set out in the March 2022 LOE in relation to your representation of Northwest Senior Housing Corporation ("Edgemere" or the "Company").  Pursuant to this Addendum Letter, work is expanded to include providing the Services as detailed in the March 2022 LOE to Senior Quality Lifestyles Corporation ("SQLC"), an affiliate of the Company.

2. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Amendment by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter, please do not hesitate to contact Chad J. Shandler at (212) 841-9349.

Yours faithfully,


FTI CONSULTING, INC.


By: _____
    Chad J. Shandler
    Senior Managing Director

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**


Polsinelli PC

By: _____
    Bobby Guy
    Sharholder


Date: _____


Senior Quality Lifestyles Corporation


By: _____
    Nick Harshfield
    Treasurer

    4/7/2022  |  8:26 AM CDT
Date: _____

## **EXHIBIT 1**

### **List of Potential Parties in Interest**

82402207.13

## EXHIBIT 1

**Listing of Parties-in-Interest Reviewed for Current and Recent Former Relationships**

**Debtor**
Northwest Senior Housing Corporation
Senior Quality Lifestyles Corporation

**Affiliated Parties**
LifeSpace, Inc.
Abbey Delray
Abbey Delray South
AON CCRC LLC (Iowa LLC)
Augustine Home Health Texas LLC
Barton Creek Senior Living Center, Inc.
(Querencia)
Beacon Hill
Claridge Court
Friendship Village of Bloomington
Friendship Village of South Hills
Harbour's Edge
Lifespace Communities, Inc.
Lifespace Management, Inc.
Lifespace Services, Inc.
Newcastle Place LLC
Oak Trace
Prairie View Club of Kansas
Seniority Inc.
SQLC LSA, LLC
Tarrant County Senior Living Center, Inc. dba
The Stayton at Museum Way
The Lifespace Foundation
The Waterford
Village on the Green

**Former, Assumed and Trade Names of the Debtor**
d/b/a Edgemere

**Current and Former Directors and Officers (2019 & 2020 Form 990)**
Abdul Shakoor
Ann Joyce
Chris Hutfless
Christopher Santuae
Eddie Fenoglio
Elizabeth White
Jesse Jantzen
Keri McAnally
Larry Smith

Leslie Brownlee
Martha Holloway
Nick Harshfield
Scott Collier
Susan Carter
Thomas Brod

**Lifespace Managers**
John B. Falldine
Teresa E. Bates

**Professionals (Law Firms; Accountants; Appraisers; Tax Preparers; etc)**
AJ Gallagher
DLA Piper LLP
FTI Consulting, Inc.
Kurtzman Carson Consultants, LLC
Marsh & McLennan Agency, LLC
Power Taylor Law Firm
Sidley Austin LLP

**Current & Former Banking Institutions**
Bankers Trust
Regions Bank
UMB Bank, NA

**Restructuring Professionals**
Polsinelli

**Bondholders**
Alliance Bernstein LP
First Trust Advisors LP
FMR LLC
Holloway Wealth Management LLC
Lapis Advisers, LP
Massachusetts Financial Services Co.
Nuveen Asset Management, LLC as investment adviser for certain funds/accounts
Olive Street Investment Advisers LLC
Royal Bank of Canada
Silvercrest Asset Management Group LLC
State Street Corp.
T Rowe Price Group Inc.
Teachers Insurance & Annuity Association of America
USAA Mutual Funds on behalf of its USAA Tax

Exempt Long-Term Fund and its USAA Growth
and Tax Strategy Fund
Van Eck Associates Corp
Victory Capital Management Inc.

**Insurance Providers**
Argonaut Insurance Company
Ascot Insurance Company
Beazley Insurance Company
Beazley Insurance Company
Caring Communities
Ironshore Specialty Insurance Company
Liberty Mutual Fire Insurance Company
Liberty Mutual Insurance Company
Life Insurance Company of North America
National Casualty Company
RSUI Indemnity Company
Sentry Casualty Company
Sentry Insurance
Underwriters at Lloyds, London (Hiscox)

**Government Regulatory & Taxing Authorities**
Centers for Medicare and Medicaid Services
City of Dallas
Dallas County Tax Office, John R. Ames, CTA
Tax Assessor/Collector
Department of the Treasury
Texas Comptroller of Public Accounts
Texas Department of Insurance
Texas Department of Labor
Texas Department of Licensing & Regulation
Texas Health & Human Services
Texas Workforce Commission
United States Treasury

**Unsecured Creditors**
Andrew Croom Custom Builders LLC
ARC Waterproofing Sealant LLC
Direct Supply Inc
McKesson Medical-Surgical
Mr. AC Heating & Cooling LLC
Omnicare of Fort Worth
On Demand Staffing
Select Rehabilitation LLC
Unidine Corporation

**Top 30 Largest Unsecured Creditors**

**Residents – Move outs -Triggered and Untriggered**

**Utility Companies**
AT&T
AT&T Mobility
Atmos Energy
City of Dallas
Community Waste Disposal LP
Fusion LLC
Reliant Energy Services
Spectrum
Spectrum (f/k/a Time Warner Cable)
Verizon

**Employee Benefit Administrators**
ADP, LLC
Delta Dental
Eyemed
Metlife
OptumRx
Symetra Life Insurance Company
Wellmark BCBS of Iowa

**Judges in the United States Bankruptcy Court for the Northern District of Texas Dallas Division**
Judge Harlin D. Hale
Judge Robert L. Jones
Judge Stacey G. C. Jernigan
Judge Mark X. Mullin
Judge Edward L. Morris
Judge Michelle V. Larson

**Office of the United States Trustee – Region 6 Dallas Office**
Lisa L. Lambert
Assistant United States Trustee

**U.S. Trustee Employees – Region 6 Dallas Office**
Asher Bublick
Kara Croop
Christi C. Flanagan
C. Marie Goodier
Meredyth Kippes
Felicia P. Palos
Bradley D. Perdue
Nancy S. Resnick
Kendra M. Rust
Erin Schmidt
Lisa Smoot
Joseph W. Speranza
Rafay Suchedina

Steven Whitehurst
Cheryl H. Wilcoxson
Cindy Worthington
Elizabeth Young

**Lenders to Non-Debtor Affiliates**
N/A

**Litigants / Litigation Parties**
Cherry Petersen Landy Albert LLP
Intercity Investment Properties, Inc.

**Other Parties As Known**
Credit Agricole Group
DLA Piper LLP
Dorsey & Whitney LLP
Holland & Knight LLC
Invesco Ltd
Locke Lord LLP
Lumen (f/k/a Level 3)
Reliant Energy Services
Waste Connections
Alliance Bernstein LP

## EXHIBIT 2

### Listing of Parties-in-Interest Noted for Court Disclosure

**Relationships in Matters Related to These Proceedings**

**None**

**Relationships in Unrelated Matters - Current**

**Affiliated Parties**
Tarrant County Senior Living Center, Inc. dba
The Stayton at Museum Way

**Professionals (Law Firms; Accountants;
Appraisers; Tax Preparers; etc)**
AJ Gallagher
Sidley Austin LLP

**Current & Former Banking Institutions**
Regions Bank
UMB Bank, NA

**Bondholders**
First Trust Advisors LP
Nuveen Asset Management, LLC as investment
adviser for certain funds/accounts
Royal Bank of Canada
State Street Corp.
T Rowe Price Group Inc.

**Insurance Providers**
Beazley Insurance Company
Ironshore Specialty Insurance Company
Liberty Mutual Insurance Company
Underwriters at Lloyds, London (Hiscox)

**Government Regulatory & Taxing
Authorities**
Department of the Treasury
United States Treasury

**Top 30 Unsecured Creditors**
McKesson Medical-Surgical

**Utility Companies**
AT&T
AT&T Mobility
Atmos Energy
City of Dallas
Community Waste Disposal LP
Fusion LLC
Reliant Energy Services
Spectrum
Spectrum (f/k/a Time Warner Cable)
Verizon

**Employee Benefit Administrators**
ADP, LLC
Delta Dental
Metlife
OptumRx

**Other Parties As Known**
Credit Agricole Group
DLA Piper LLP
Dorsey & Whitney LLP
Holland & Knight LLC
Invesco Ltd
Locke Lord LLP
Lumen (f/k/a Level 3)
Reliant Energy Services
Waste Connections
Alliance Bernstein LP

**Relationships in Unrelated Matters – Former Clients (Last Two Years)**

**Affiliated Parties**
LifeSpace, Inc.
Lifespace Communities, Inc.


**Bondholders**
Alliance Bernstein LP