| | |
|---|---|
| Trinitee G. Green (SBN 24081320) | Jeremy R. Johnson (Admitted *Pro Hac Vice*) |
| Polsinelli PC | Brenna A. Dolphin (Admitted *Pro Hac Vice*) |
| 2950 N. Harwood, Suite 2100 | Polsinelli PC |
| Dallas, Texas 75201 | 600 3rd Avenue, 42nd Floor |
| Telephone: (214) 397-0030 | New York, New York 10016 |
| Facsimile: (214) 397-0033 | Telephone: (212) 684-0199 |
| tggreen@polsinelli.com | Facsimile: (212) 684-0197 |
| | jeremy.johnson@polsinelli.com |
| | bdolphin@polsinelli.com |

PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Northwest Senior Housing Corporation, *et al.*,[1] | Case No. 22-30659 (MVL) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF SUPPLEMENT TO APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

PLEASE TAKE NOTICE that on April 14, 2022, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Debtors' Application for Authority to Employ and Retain FTI Consulting, Inc. as Financial Advisor to the Debtors Effective as of the Petition Date* [Docket No. 29] (the "**Application**") with the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**").

PLEASE TAKE FURTHER NOTICE attached hereto as Exhibit 1 and Exhibit 2 are true and correct copies the engagement agreement and addendum, respectively, that shall substitute and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Northwest Senior Housing Corporation (1278) and Senior Quality Lifestyles Corporation (2669). The Debtors' mailing address is 8523 Thackery Street, Dallas, Texas 75225.

83318091.2

replace Exhibits C and D to the Application. Notice of this filing is being served in accordance with the Application.

|  |  |
|---|---|
| Dated: May 4, 2022<br>Dallas, Texas | **POLSINELLI PC**<br><br>*/s/ Trinitee G. Green*<br>Trinitee G. Green (SBN 24081320)<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Telephone: (214) 397-0030<br>Facsimile: (214) 397-0033<br>tggreen@polsinelli.com<br><br> – and –<br><br>Jeremy R. Johnson (Admitted *Pro Hac Vice*)<br>Brenna A. Dolphin (Admitted *Pro Hac Vice*)<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Telephone: (212) 684-0199<br>Facsimile: (212) 684-0197<br>jeremy.johnson@polsinelli.com<br>bdolphin@polsinelli.com<br><br>PROPOSED COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION |

83318091.2

# **EXHIBIT 1**

83318091.2



Chad J. Shandler
FTI Consulting, Inc.
1166 Avenue of the Americas
15th Floor
New York, New York 10036
212 841 9349

PRIVATE & CONFIDENTIAL

March 3, 2022

Bobby Guy
Sharholder
Polsinelli PC
401 Commerce Street
Suite 900
Nashville, TN 37219

Re: Northwest Senior Housing Corporation

Dear Mr. Guy:

1. **Introduction**

    This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Polsinelli PC (the "Firm"), to provide certain financial advisory and consulting services (the "Services") as set forth below in relation to your representation of Northwest Senior Housing Corporation ("Edgemere" or the "Company"). This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided. This letter reflects the Company's change is counsel from Sidley Austin LLP ("Sidley") and FTI's retention pursuant to a letter of engagement dated May 1, 2021 and addendum to that letter of engagement dated February 1, 2022.

2. **Scope of Services**

    The Services, to be performed at your direction and at the direction of the Company to assist you in the provision of advice and legal services to the Company, are expected to include the following:

    **Assessment Services**
    - Gain an understanding of the Company's business, books and records and reporting systems;
    - Assessment of the Company's operations and financial performance and recommendations for improvement, including but not limited to:
        - Revenue, billing, and cash collection procedures;
        - Operating expenses;
        - Management and staffing;
        - Marketing function and programs; and
        - Organizational structure;
    - Assessment of the Company's liquidity and working capital, including sources of cash, accounts receivable and accounts payable;

Polsinelli PC
March 3, 2022

- Assessment of the Company's reported results of operations;
- Assessment of prior consultants' reports, if any; and
- General overall assessment of the Company's facilities.

**Consulting Services**
- Prepare/or assist the Company's management with the preparation of projected financial statements and/or 13week cash flow forecast;
- Formulate recapitalization and debt restructuring alternatives, if necessary;
- Preparation of presentations to lender(s) relating to forbearance and/or restructuring of obligations, if necessary;
- Assist the Company and its counsel in negotiations with the Company's lender(s) regarding forbearance terms and/or other restructuring alternatives, if necessary;
- Assist the Company and its counsel in negotiations and/or discussions with Federal or state regulators, if necessary;
- Assist the Company and its counsel in negotiation with the Company's personal property lessors regarding improved lease terms or return of property;
- Assist the Company with an affiliation or the sale of its assets, including data room support and negotiations with prospective interested parties and purchasers of the Company's assets;
- Consult with management, and where necessary assist in the preparation of reports to the Company's lender(s) (and other creditors as required) regarding its financial performance; and
- Participate in meetings and telephone calls with management, counsel, lenders and other parties, as necessary.

**Other Services**
- Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Banktrupcy Court approval is sought;
- Assistance to the Company in the preparation of financial-related disclosures required by the Bankruptcy Court, including the Company' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;
- Assistance to the Company with information and analyses required pursuant to the Company' use of cash collateral including, but not limited to, preparation for hearings regarding the use of cash collateral;
- Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;
- Assistance regarding the valuation of the present level of operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;
- Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;
- Assistance to Company' management team and the Firm focused on the coordination of resources related to the reorganization effort;
- Attendance at meetings and assistance in discussions with potential secured lenders, any official committee(s) appointed in these Chapter 11 Cases, the United States Trustee, other parties in interest and professionls hired by same, as requested; other communications

Polsinelli PC
March 3, 2022

- with the Company's creditors and governmental authorities (the general direction for which will be determined by the Board);
- Develop strategy, including communications, relating to residents, former residents, vendors, and employees;
- Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;
- Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including information contained in the disclosure statement; and
- Provide testimony in these Chapter 11 Cases as necessary or appropriate at the Company's request; and
- Rendering such other general business consulting or such other assistance as Company' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by you to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist you or the Company (and its other legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

3. **Privileged and Confidential Work Product**

To the extent possible, written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential". Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without your permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you that are identified as confidential.

4. **Fees**

Polsinelli PC
March 3, 2022

We understand that we are being retained by You in connection with your provision of legal services to the Company. Accordingly, we will not look to the Firm for payment of our fees but rather will look solely to the Company. We acknowledge that the Firm will have no obligation for our fees. Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour (USD) |
| --- | --- |
| Senior Managing Directors | $920 – 1,325 |
| Directors / Senior Directors / Managing Directors | 590 – 960 |
| Consultants/Senior Consultants | 370 – 695 |
| Administrative / Paraprofessionals | 130 – 300 |

Hourly rates are generally revised periodically. We will notify you of any changes to our rates. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable for the International divisions or personnel. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Further, if FTI and/or any of its emloyees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $250,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees that invoices are due upon receipt and will promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree),

Polsinelli PC
March 3, 2022

without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI has earned and will be entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

5. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

6. **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company, the Master Trustee, as defined in the Master Trust Indenture between the Company and UMB Bank, N.A. dated as of November 15, 1999, effective as of Aprril 1, 2006 and the Supplemental Indenture #6 dated March 1, 2017, and its counsel. As you may be aware, FTI is regularly retained by the Master Trustee (or law firms retained by the Master Trustee). However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

Polsinelli PC
March 3, 2022

7. **Acknowledgement and Acceptance**

    Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Chad J. Shandler at 212 841 9349.

Yours faithfully,

FTI CONSULTING, INC.

By: _____
Chad J. Shandler
Senior Managing Director

Attachment – As stated

Polsinelli PC
March 3, 2022 -7-

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Polsinelli PC

By: _____
      Bobby Guy
      Shareholder

Date: _____

Northwest Senior Housing Corporation

By: _____
      Nick Harshfield
      CFO, Treasurer, and Secretary

Date: _____

DocuSign Envelope ID: EAFBF9C4-6E96-4FCA-AA4C-6B4ED1E0FF2B

Attachment – As stated

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Polsinelli PC

By: _[signature]_

Bobby Guy

Shareholder

Date:

Northwest Senior Housing Corporation

By: _[DocuSigned signature]_
0FBD63BFF8124CA...
Nick Harshfield

CFO, Treasurer, and Secretary

Date: 3/7/2022 | 9:31 PM CST

-3-

**FTI CONSULTING, INC.**

# FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated March 3, 2022. The engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1. Reports and Advice**

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of you and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither you nor the Company shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2. Information and Assistance**

2.1 **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2 **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4 **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3.  **Additional Services**

3.1  **Responsibility for other parties** – You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

4.  **Confidentiality**

4.1  **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

    4.1.1  is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2  is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3  is or has been independently developed by the recipient.

4.2  **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3  **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4  **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5  **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

5.  **Termination**

5.1  **Termination of Engagement with notice** – All parties (you, the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6. Indemnification and Liability Limitation**

6.1 **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all third party claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to the retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination. FTI agrees to indemnify and hold harmless the Company and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees from and against any and all third party claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to an Adverse Determination.

6.2 **Limitation of liability -** Excluding a party's indemnification obligations for third party claims, neither party shall be liable to the other party, or a party's successors, affiliates or assigns for (a) damages in excess of the total amount of the fees paid and payable to FTI under this Engagement Contract, or (b) consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7. Governing Law, Jurisdiction and WAIVER OF JURY TRIAL**

7.1 **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3 **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Polsinelli PC

By: _____
    Bobby Guy
    Shareholder

Date:_____

Northwest Senior Housing Corporation

By: _____
    Nick Harshfield
    CFO, Treasurer, and Secretary

Date: _____

DocuSign Envelope ID: EAFBF9C4-6E96-4FCA-AA4C-6B4ED1E0FF2B

FTI CONSULTING, INC

-2-

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Polsinelli PC

By: _____
Bobby Guy
Shareholder

Date:

Northwest Senior Housing Corporation

By: _____
Nick Harshfield
CFO, Treasurer, and Secretary

Date:    3/7/2022 | 9:31 PM CST

-3-

# **EXHIBIT 2**

4

83318091.2



Chad J. Shandler
FTI Consulting, Inc.
1166 Avenue of the Americas
15th Floor
New York, New York 10036
212 841 9349

PRIVATE & CONFIDENTIAL

April 6, 2022

Bobby Guy
Sharholder
Polsinelli PC
401 Commerce Street
Suite 900
Nashville, TN 37219

Re: Senior Quality Lifestyles Corporation

Dear Mr. Guy:

1. **Introduction**

   This letter is an addendum to the engagement contract between FTI Consulting, Inc. ("FTI") and you, Polsinelli (the "Firm") dated March 3, 2022 (the "March 2022 LOE") (this "Addendum Letter"), to provide certain financial advisory and consulting services (the "Services") as set out in the March 2022 LOE in relation to your representation of Northwest Senior Housing Corporation ("Edgemere" or the "Company"). Pursuant to this Addendum Letter, work is expanded to include providing the Services as detailed in the March 2022 LOE to Senior Quality Lifestyles Corporation ("SQLC"), an affiliate of the Company.

2. **Acknowledgement and Acceptance**

   Please acknowledge your acceptance of the terms of this Amendment by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter, please do not hesitate to contact Chad J. Shandler at (212) 841-9349.

Yours faithfully,

FTI CONSULTING, INC.

By: _____
Chad J. Shandler
Senior Managing Director

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Polsinelli PC

By: _____
Bobby Guy
Sharholder

Date: 4/6/22

Senior Quality Lifestyles Corporation

By: _____
    DocuSigned by:
    Nick Harshfield
    Treasurer

Date: 4/7/2022 | 8:26 AM CDT

-2-